IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TOMEKA N. WALLACE, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 3:16-cv-859-TFM |
| | ) [wo] |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.*, and Supplemental Security Income benefits under Title XVI of the Social Security Act, Tomeka N. Wallace ("Wallace" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying disability insurance benefits and supplemental security income benefits.

**I. NATURE OF THE CASE**

Wallace seeks judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits and supplemental security

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

assure that their income does not fall below the poverty line.[3] However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

---

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert. *Id*. at 1239-40.

---

4     *See* 20 C.F.R. pt. 404 subpt. P, app. 2

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Wallace brought a disability claim because of migraines and seizures. (R.188). Following initial administrative denial of her claim, Wallace petitioned for a hearing before an administrative law judge ("ALJ") (R. 98). Wallace and her attorney came before ALJ Walter V. Lassiter, Jr., ("the ALJ") for an evidentiary hearing on February 1, 2016. (R. 36-62). The ALJ received direct testimony from Wallace and Marcia Schulman, a Vocational Expert ("VE"). The remaining evidentiary record consisted of medical reports from treating sources and residual functional capacity assessments completed by medical consultants who examined Wallace and reviewed medical records upon request of Alabama Disability Determination Services.[5] The ALJ rendered an unfavorable verdict on June 24, 2016. (R. 14-30). On September 29, 2016, the

---

[5] Andrea Cope, (R. 77). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a).

Appeals Council denied Wallace's request for review (R. 1-4). This Social Security Appeal was filed on October 31, 2016. *See* Doc. 1, Complaint.

## V. ADMINISTRATIVE DECISION

Employing the five step process, the ALJ found that Wallace has not engaged in substantial gainful activity since the alleged onset date (Step 1);[6] has severe impairments (Step 2); the impairments, considered individually and in combination, do meet or equal in severity any impairment set forth in the listings (Step 3); Wallace has past relevant work as a hostess and parts inspector (Step 4); and a significant number of jobs are available in the national economy which Wallace could perform with her residual functional capacity (Step 5). (R. 17-30).

The ALJ utilized Vocational Expert (VE) testimony which indicates Wallace can perform work available in the national economy. (R. 17-30, 58-62).

## VI. ISSUES

Wallace raises two issues on appeal:

(1) The Commissioner's decision should be reversed because the ALJ erred by failing to properly and/or adequately reject all medical opinions of record expressed by Ms. Wallace's treating specialist.
(2) The Commissioner's decision should be reversed because the ALJ erred by improperly acting as both Judge and medical doctor. Plaintiff's brief at 3.

## VII. DISCUSSION AND ANALYSIS

**A.     The ALJ properly considered the opinions of the treating physician.**

In a nutshell, Wallace claims the ALJ improperly discounted the opinion of her treating physician, Dr. Wael Hamo. Dr. Hamo opines that Wallace has pain to such an extent that she would have to abandon work tasks. (R. 909-912). Dr. Hamo concludes Wallace could lift 20

---

[6] The ALJ found the following "severe" impairments: obesity, headaches of unknown etiology, controlled with medication compliance, very questionable history of seizures activity, controlled with medication compliance and status hemmorhoidectomy. (R. 19).

pounds occasionally to 10 pounds frequently, sit 7 hours and stand or walk 1 hour in an 8 hour work day, occasionally bend and/or stoop, rarely push and pull movements (arm and/ or leg controls), climb (stairs or ladders) and balance, gross manipulation, (grasping, twisting, and handling), fine manipulation (finger dexterity), reach (including overhead), environmental problems, and operating motor vehicles, and never work with or around hazardous machinery (R. 909). Dr. Hamo concludes that Wallace is likely to be absent from work more than 4 days per month. Dr. Hamo ascribes his prognosis to Wallace's right moderate carpal tunnel syndrome, left mild carpal tunnel syndrome, chronic neck pain, migraine and neck related headache and seizure disorder. (R. 909). The limitations as set forth by Dr. Hamo, if accepted by the ALJ, would render Wallace disabled under the Act and its attendant regulations. (R. 60-61).

An ALJ may properly reject a medical opinion from treating or examining physicians under much the same circumstances. The regulations give preference to the opinion of the treating physicians. 20 C.F.R. § 404.1527(d)(1)-(2); *Winschel*, 631 F.3d at 1179 ("Absent good cause, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.") (internal citations and quotations omitted). However, "the ALJ has the discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician…[but] if he follows that course of action, he must show 'good cause' for his decision." *Gholston v. Barnhart*, 347 F.Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Phillips*, 357 F.3d at 1240 (quoting *Lewis,* 125 F.3d at 1440) (The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). In other words, the Eleventh Circuit has found good cause for discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir.1991)). Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records[.]" *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440).

The medical record and evidence before the ALJ was ample for the ALJ to disregard the prognosis of Dr. Hamo. The record establishes that Wallace does suffer from carpal tunnel syndrome but even Dr. Hamo concludes the condition is mild on the left and moderate on the right. (R. 22, 300). The mere presence of a condition is not sufficient alone to establish disability. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). After making his carpal tunnel diagnosis, Dr. Hamo prescribed wrist splints and injections. At times, Wallace declined injections and took them at other times. Wallace tolerated the procedure well and presumably found improvement. In any event, no doctors recommended or suggested corrective surgery (R. 51). The ALJ, after review of the entire medical record was able to easily discern that Dr. Hamo, other treating physicians and indeed Wallace chose a very conservative treatment regime. The conservative nature of medical treatment is a legitimate basis to discount a disability claim. *Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008). The court agrees with the ALJ in this regard with respect to Wallace.

Next, the treatment notes are inconsistent with the prognosis of Dr. Hamo. Several records *vis a vis* the extent to which carpal tunnel syndrome affects Wallace are inconsistent with the prognosis of Dr. Hamo and consistent with the finding of the ALJ. Specifically, Wallace had

good to full grip strength during several examinations. (R. 292, 295, 299, 352-354, 459, 626, 905). The court agrees with the ALJ that the medical record in this respect is inconsistent with a disability finding.

Likewise, the treatment records *vis a vis* migraines are inconsistent with the prognosis of Dr. Hamo and consistent with the findings of the ALJ. In a nutshell, the ALJ concluded and the court agrees that to the extent Wallace has headaches, her condition is controlled by medication compliance. (R 22, 275, 923, 925). A medical condition which can be controlled by medication is not disabling. 20 C.F.R. § 930(b), *See, Dawkins, v. Bowen*, 848 F. 2d 1211, 1213 (11th Cir. 1988).

Further the treatment records regarding seizures are inconsistent with the prognosis of Dr. Hamo and consistent with the findings of the ALJ. Dr. Hamo concludes that Wallace will likely miss four days of work per month and suffer from decreased concentration. (R. 909-912). Treatment notes indicate that outside brief seizure spells, Wallace had normal memory, attention, and concentration. (R. 292, 295, 299, 626, 905). Wallace, by her own admission, said that other than brief seizure spells she had no problems with memory or concentration. (R. 222). Of particular note is that Wallace in her personal assessment of how her conditions affect her was asked, "For how long can you pay attention". Wallace's written response was, "unlimited." The court agrees with the ALJ that to the extent that Wallace does suffer from seizures, compliance with her medication regime will likely control her condition. (R. 25, 26, 29). Dr. Chivukula, her prior treating physician found that Wallace was not compliant with her medication regime and that compliance with her treatment protocol would control the seizures. (R. 29, 275). The commissioner may deny benefits when a claimant fails to follow a course of treatment that could restore the ability to work. Lucas v. Sullivan, 918 F. 2d 1567, 1571 (11th Cir. 1990).

**B. The ALJ did not act as medical doctor and judge.**

Plaintiff argues the ALJ acted as both Judge and medical doctor when the ALJ characterized Wallaces' seizures and headaches as questionable. The court agrees with the ALJ that it is questionable from the medical evidence before the ALJ whether and to what extent Wallace may suffer from headaches and seizures. The ALJ did not reject the medical diagnosis at step two (R. 19-22). The ALJ simply gave greater weight to the opinion of Dr. Chivukkula as being more consistent with the other medical evidence. Ultimately, every ALJ in every disability claim has to weigh medical evidence, opinions and testimony and then assign weight to whatever evidence the ALJ finds persuasive. As long as the decision is rational and supported by substantial evidence, the court will affirm. *Winschell v. Comm'r of Soc. Sec.*, 631 F. 3d 1176, 1179 (11th Cir. 2011). The court finds that the ALJ gave more than ample reason to discount the prognosis of Dr. Hamo.

### VIII. Conclusion

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence and no legal error was committed. It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED. A separate judgment is entered herewith.

DONE this 8th day of January, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE